COURT OF APPEALS
DECISION
DATED AND FILED

December 28, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2020AP1596-CR**

Cir. Ct. No.  2018CF1817

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT III**

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

CHARLES E. FEDIE,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Eau Claire County:  JON M. THEISEN, Judge.  *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Charles Fedie appeals from a judgment of conviction for both possession of child pornography and sexual exploitation of a child, as well as the denial of his motion for postconviction relief.  Fedie argues a

manifest injustice compels the withdrawal of his guilty pleas, based on ineffective assistance of his counsel for failing to challenge a search warrant. We reject his arguments and affirm.

## BACKGROUND

¶2 Detective Jeff Nocchi of the Eau Claire County Sheriff's Office applied for a search warrant to search a home on Lloyd Avenue for evidence related to possession of child pornography. In his affidavit supporting the warrant, Nocchi explained that Wisconsin Department of Justice special agents received a Cybertip from the National Center for Missing and Exploited Children and forwarded it to the sheriff's office for investigation. The investigation revealed the Cybertip originated with Facebook after an image was uploaded to its website.

¶3 Sheriff's deputies examined the image uploaded to Facebook, and it was described as depicting a "prepubescent Caucasian male":

> In the image, the prepubescent male was nude and his body was visible from the knees up. The male was seated in a white folding chair with his hands posed behind his head. The male's penis was exposed to the camera and there did not appear to be any pubescent development of pubic hair present. The male had shaggy brown hair that was swept to the left side of his head. This image appeared to be posed and appeared to be child pornography.

¶4 According to Facebook's Cybertip, the image was linked to a specific Internet Protocol (IP) address, and the Facebook user name was colton.phillips.9047. According to the search warrant affidavit, Facebook provided information that the account was registered to "Colton Phillips" with a birthdate of "07-01-2001" and that the account was associated with a specific email address, and a Twitter account, which was "listed to 'Charlie Fedie.'"

¶5    The search warrant affidavit further stated that a Twitter page for "Charlie Fedie" contained tweets and replies to a website associated with sexual activity, as well as correspondence on accounts with usernames that included "boi" and "twink." Nocchi averred in the search warrant affidavit that "twink" and "boi" are commonly used terms for underage males in child pornography. There were also numerous messages about sex on the "Charlie Fedie" Twitter page, such as "let's have a fuck fest" and "hey beautiful want to have sex with u."

¶6    A Department of Justice employee sent an administrative subpoena to AT&T for information about the IP address associated with the Cybertip. AT&T records reflected that the IP address was associated with a billing and service address on Lloyd Avenue. It was determined through a search of Wisconsin Department of Transportation records that Fedie resided at the Lloyd Avenue residence. A pickup truck registered to Fedie was later observed at the residence.

¶7    Nocchi also averred in the search warrant affidavit that, based upon his training and experience, images or visual depictions representing the possible exploitation of children are retained on digital devices and individuals who collect child pornography are unlikely to voluntarily dispose of the images because they are considered prized and valuable materials. The affidavit further averred that individuals who possess child pornography routinely maintain copies, archives, and backups of their child pornography collection.

¶8    The circuit court issued the search warrant, and upon execution of it, law enforcement recovered electronic devices, including cameras, phones, and computers, together with digital storage devices, including memory sticks and a floppy disc. Later analysis of the devices revealed over 100 images and videos of

suspected child pornography. Fedie was present when officers executed the search warrant. Fedie made statements to the officers about his interest in pornography associated with young males, but he claimed that he tries not to look at males under eighteen years of age. When shown a portion of the image that formed the Facebook Cybertip, Fedie stated he believed that he had seen it previously, but he did not remember if he uploaded the image to Facebook.

¶9 A deputy asked Fedie if he used his own Facebook account or if he used a different Facebook account. Fedie stated, "I used to have another one," and "it was under Cole Phillips." When using the "Cole Phillips" account, Fedie portrayed himself as a sixteen year old, and some of his friends may have been sixteen or seventeen years old. Fedie said he talked about sex with these individuals "but not actually doing it with them." During further law enforcement interviews, Fedie also admitted to sexually assaulting two younger males, ages twelve or thirteen years old, when he was in his twenties. A detective followed up with one of the male victims and he reported that he was between eight and ten years old when Fedie sexually assaulted him.

¶10 An Information alleged seven counts of possession of child pornography and one count of sexual exploitation of a child. Fedie entered guilty pleas to four counts of possession of child pornography and the sexual exploitation count. The circuit court imposed concurrent terms of three years' initial confinement and three years' extended supervision on the possession counts. On the exploitation count the court ordered a concurrent sentence of five years' initial confinement and ten years' extended supervision.

¶11 Subsequently, Fedie sought to withdraw his pleas, alleging ineffective assistance of his counsel for failing to move to suppress the evidence

obtained through the search warrant, claiming "[t]here is nothing described in the photo as a pose that is sexual in nature." He later supplemented the motion, alleging Nocchi recklessly misled the magistrate who signed the search warrant when Nocchi characterized "boi" and "twink" as terms commonly used to refer to males under the age of eighteen.

¶12 The circuit court found that trial counsel's performance was not deficient based on its conclusion that the search warrant established probable cause. The court also found that Fedie's attorney had a strategic reason for not bringing the suppression motion in that he did not view the motion as viable. The court further determined that the warrant was not invalid on its face. Regardless, the good faith exception to the exclusionary rule would have precluded suppression because a significant investigation occurred and the warrant was signed by a trained officer and reviewed by a knowledgeable government attorney. Fedie now appeals.

## DISCUSSION

¶13 Fedie argues a manifest injustice compels the withdrawal of his pleas based upon a claim of ineffective assistance of counsel for failing to challenge the search warrant. Specifically, Fedie argues the warrant was insufficient because it did not provide probable cause to conclude that his devices contained evidence of child pornography. He contends that "[t]here is no sexual posing stated in the search warrant so there is no child pornography," and the references to "boi" and "twink" were reckless or false misrepresentations as those terms generally relate to gay men, not underage boys. Fedie contends he would not have entered his guilty pleas had he known the warrant could be successfully challenged.

5

¶14    We accord great deference to a warrant-issuing magistrate's probable cause determination. *State v. DeSmidt*, 155 Wis. 2d 119, 132, 454 N.W.2d 780 (1990). We will uphold the probable cause determination unless the defendant establishes that the facts asserted in support of the warrant are clearly insufficient to support probable cause. *State v. Ward*, 2000 WI 3, ¶21, 231 Wis. 2d 723, 604 N.W.2d 517. The quantum of evidence required to establish probable cause to issue a search warrant is less than that needed to bind a defendant over for trial. *DeSmidt*, 155 Wis. 2d at 132. In the search warrant context, to find probable cause the issuing magistrate must make a practical, commonsense decision that there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.* at 131. Whether probable cause exists is determined by analyzing the totality of the circumstances. *Id.*

¶15    Fedie likens the image at issue in the present case to Michelangelo's David, which Fedie claims is also posing, and whose "genitals are showing in the statue." However, Nocchi did not describe mere nudity. The image here was described as a posed, pre-pubescent male with no pubic hair, seated on a chair facing the viewer, naked from the knees up, with his penis clearly visible to the camera. The description was sufficient to support a commonsense inference that this was not an innocent photograph, but instead that the child was posed in a manner consistent with viewing a child as a sex object—i.e., in a lewd and sexually explicit manner consistent with WIS. STAT. §§ 948.01(7)(e) and 939.22(19) (2019-20).[1] *See State v. Lala*, 2009 WI App 137, ¶11, 321 Wis. 2d 292, 773 N.W.2d 218. In other words, a reasonable person reading the description

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

in the affidavit could reasonably infer that the child was posed in a manner to incite lust, lechery, or "sensual desire or imagination." *See State v. Lubotsky*, 148 Wis. 2d 435, 438-39, 434 N.W.2d 859 (Ct. App. 1988).

¶16     More importantly, however, the image was not described in a vacuum in the affidavit. Rather, other circumstantial information in the affidavit supported the inference that the image uploaded to Facebook constituted child pornography. This evidence included a connection between the Facebook page under the name of "Colton Phillips," which was associated with an email address and a Twitter account listed to "Charles Fedie." When law enforcement reviewed the "Charles Fedie" Twitter page, they observed references to sexually explicit messages. Through an administrative subpoena, officers associated the IP address in the Cybertip to the home on Lloyd Avenue. The subscriber had the same last name as Fedie. Law enforcement compared a photo on the "Charles Fedie" Twitter account to the photo for Fedie's driver's license and concluded that the photos were of the same male. A truck with a registration plate listed to Fedie was observed parked outside the Lloyd Avenue residence. These facts showed a nexus between the upload of suspected child pornography on a social media account circumstantially connected to Fedie and an IP address associated with Fedie's residence. The totality of these circumstances established a fair probability that evidence of child pornography would be found at Fedie's residence. *See DeSmidt*, 155 Wis. 2d at 131.

¶17     In addition, the process that resulted in the Cybertip also supported a reasonable inference that the image constituted child pornography. Facebook, as a mandatory reporter for suspected child abuse, referred the image to the national clearing house designated under federal law for Cybertips. *See United States v. Ackerman*, 831 F.3d 1292, 1296-97 (10th Cir. 2016). The image was in turn

forwarded to the Department of Justice for further investigation. After determining the image was associated with the Eau Claire IP address, the matter was then forwarded to the Eau Claire County Sheriff's Office for investigation. These steps undertaken by various entities charged with ferreting out online exploitation of children heightened the reliability of the tip and further supported the issuance of the search warrant. *See* ***State v. Silverstein***, 2017 WI App 64, ¶19, 378 Wis. 2d 42, 902 N.W.2d 550.

¶18    Fedie's arguments fail to appreciate that a magistrate issuing a search warrant is not required to rule out the possibility of innocent behavior, such as Fedie's contention that his conduct was nothing more than "a homosexual man talking about sex with other homosexual men online." The test is not whether the inference drawn is the only reasonable inference, or whether there are other plausible explanations. The test is whether the inference drawn by the magistrate and the circuit court is a reasonable one. ***Ward***, 231 Wis. 2d 723, ¶30. Here, an obvious and reasonable inference is that the image constituted child pornography. Probable cause supported the issuance of a search warrant to investigate the possession of child pornography at Fedie's residence.

¶19    Fedie also argues that Nocchi's statement that "[t]wink" and "boi" are commonly used terms for underage males in child pornography constituted a reckless misrepresentation or omission under ***Franks/Mann***.[2] The circuit court rejected this argument, finding there was no indication Nocchi made a false or misleading statement with a reckless disregard for the truth.

---

[2] Referring to ***Franks v. Delaware***, 438 U.S. 154 (1978), and ***State v. Mann***, 123 Wis. 2d 375, 367 N.W.2d 209 (1985).

¶20    The "veracity" and "basis of knowledge" of the persons supplying the information in the affidavit aid in the task of the magistrate in making the practical and commonsense decision whether, given the totality of the circumstances, there is a fair probability that contraband or evidence of crime will be found in a particular place. *DeSmidt*, 155 Wis. 2d at 131. Fedie argues there was insufficient detail provided about Nocchi's experience and training to allow any weight to be given to Nocchi's statements regarding "twink" and "boi" being commonly used to refer to males under age eighteen in child pornography. According to Fedie, without knowing how he came to this conclusion, Nocchi's statement "appeared to be based on *ipse dixit*."

¶21    We disagree.  Nocchi testified that he has investigated child pornography cases since 2011, and he has examined between sixty and seventy Cybertips.  Nocchi was familiar with how individuals communicate with others involved in the child pornography community.  Based on his experience and training, Nocchi stated that "boi" refers to an "underage male.  Usually homosexual[,]" and "twink" also refers to "underage males."  He acknowledged that the terms could also refer to young, homosexual men of a legal age, but he testified that his agency conducted numerous undercover chat investigations in which the terms were commonly used in relation to underage males.

¶22    Fedie has failed to meet his burden of showing by a preponderance of the evidence that Nocchi defined "boi" and "twink" with a reckless disregard for the truth. *See Franks v. Delaware*, 438 U.S. 154, 156 (1978).  But even if we were somehow to assume that Fedie had met his burden, the remedy is not automatic suppression of the evidence.  Rather, the court would examine the affidavit for probable cause without consideration of the challenged statement. *Id.* Striking the single sentence containing Nocchi's reference to "boi" and "twink"

does not undermine the totality of the other evidence establishing probable cause. The affidavit establishes probable cause without reference to the terms "boi" and "twink."

¶23 Accordingly, a motion to suppress would not have been successful, and Fedie's counsel was not deficient for failing to pursue a meritless motion. *See State v. Berggren*, 2009 WI App 82, ¶21, 320 Wis. 2d 209, 769 N.W.2d 110. Fedie has therefore failed to prove by clear and convincing evidence that a refusal to allow him to withdraw his pleas would result in manifest injustice. *See State v. Taylor*, 2013 WI 34, ¶24, 347 Wis. 2d 30, 829 N.W.2d 482. Because we conclude the warrant affidavit stated probable cause, we need not reach the issue of whether the good faith exception would have precluded suppression of the evidence.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.