COURT OF APPEALS
DECISION
DATED AND FILED

April 13, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP295-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF404

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

PONG MATTHEW VANG,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Dunn County: ROD W. SMELTZER, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Pong Vang appeals from a judgment convicting him of a drug offense. The issue on appeal is whether the circuit court erred in

denying Vang's motion to suppress evidence seized pursuant to a search warrant that Vang contends was defective in multiple respects. We conclude the warrant was valid, and we therefore affirm the judgment of conviction.

## BACKGROUND

¶2 The search warrant at issue was based on the affidavit of Daniel Westlund, a City of Menomonie police officer assigned to a multijurisdictional drug enforcement task force. The affidavit alleged that Westlund spoke with a confidential informant (CI) on April 27, 2017. The CI told Westlund that s/he had made several purchases of "weed" or marijuana from Vang in the past, each at his residence, and had recently made arrangements to purchase more marijuana from Vang at his residence. The CI provided an address for Vang's residence on 4th Avenue, which Westlund verified through records and past contacts with Vang made by other officers in the department.

¶3 Later that same day, Westlund proceeded to arrange a controlled drug buy, equipping the CI with an audio and video recording device. While under surveillance, the CI used $600 in pre-recorded currency to purchase marijuana from Vang at the 4th Avenue residence. Following the buy, the CI provided Westlund with 122.7 grams of a "green leafy substance" s/he had purchased from Vang, which tested positive for tetrahydrocannabinols (THC), the active ingredient in marijuana.

¶4 Several weeks after the controlled drug buy, the CI informed law enforcement that Vang was going to move to a new address on the north side of Menomonie. Based on that information, law enforcement obtained a GPS warrant and confirmed though physical surveillance that Vang was living in a new

residence on Mathews Street. Westlund subsequently spoke with a property manager who stated that Vang was renting the Mathews Street residence.

¶5 On September 26, 2017, Wisconsin state trooper Travis Pung conducted a traffic stop of a vehicle being driven by Vang, who was the sole occupant. As a result of information obtained during the stop, Pung arrested Vang for operating a motor vehicle under the influence of an intoxicant (OWI) and for the possession of THC. Vang provided Pung with the Mathews Street address as his current residence.

¶6 On October 4, 2017, based upon the above information and a recitation of Westlund's experience with items commonly found in the residences of drug dealers, Westlund applied for a warrant to search the Mathews Street residence. The circuit court issued a warrant authorizing law enforcement to search the Mathews Street residence, as well as persons, outbuildings, and vehicles on the property, for:

> Tetrahydrocannabinol (THC) a controlled substance, drug paraphernalia, US currency, papers and effects as to the sale, distribution, possession of controlled substances, including safes, papers and effects as to residency, other controlled substances, devices for weighing controlled substances, packaging materials for the distribution of controlled substances, and electronic media such as cell phones, and the data contained therein.

Vang was charged with four drug-related charges based upon evidence seized pursuant to the execution of the warrant.

¶7 Vang filed a suppression motion challenging the search warrant on the dual grounds that: (1) there was an insufficient nexus between information obtained from the traffic stop and the Mathews Street residence to establish

probable cause to believe the specified items would be located in the residence; and (2) information from the earlier controlled drug buy was too stale to support a probable cause determination. The circuit court denied the suppression motion. Vang then pleaded guilty to a single count of possession of more than 10,000 grams of THC with intent to deliver, as a second and subsequent offense, in exchange for the dismissal of the remaining charges. Vang now appeals, challenging the suppression ruling. *See* WIS. STAT. § 971.31(10) (2019-20) (permitting appellate review of a suppression ruling following a plea of guilty or no contest).

## DISCUSSION

¶8 When reviewing a motion to suppress evidence, we will uphold the circuit court's findings of fact unless they are clearly erroneous. WIS. STAT. § 805.17(2) (2019-20); *State v. Hindsley*, 2000 WI App 130, ¶22, 237 Wis. 2d 358, 614 N.W.2d 48. We will, however, independently determine whether the facts found by the court satisfy applicable constitutional provisions. *Hindsley*, 237 Wis. 2d 358, ¶22.

¶9 A search warrant may be issued only upon a showing of probable cause. *State v. Romero*, 2009 WI 32, ¶16, 317 Wis. 2d 12, 765 N.W.2d 756. The judge must make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit … there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.*, ¶19. Due to the strong preference for searches conducted pursuant to a warrant, a reviewing court will defer to a judge's issuance of a warrant "unless the defendant establishes that the facts are clearly insufficient to support a finding of probable cause." *State v. Silverstein*, 2017 WI App 64, ¶13, 378 Wis. 2d 42, 902 N.W.2d 550.

¶10     There are various ways to establish a nexus between suspected drug activity and a particular place to be searched. For instance, law enforcement may conduct surveillance that shows drug sales or other suspicious activity occurring at the location. *State v. Sloan*, 2007 WI App 146, ¶32, 303 Wis. 2d 438, 736 N.W.2d 189. Alternatively, an affiant may provide a profile for someone involved in the manufacture, sale or distribution of drugs from a drug-trafficking house and show that the suspect fits that profile and resides at the address to be searched. *Id.*

¶11     Information that may have supported a determination of probable cause at some earlier date may become outdated if circumstances have changed. Whether probable cause is "stale" is determined not merely by the amount of time that has passed between the occurrence of facts relied upon and the issuance of the warrant. *See State v. Loranger*, 2002 WI App 5, ¶24, 250 Wis. 2d 198, 640 N.W.2d 555 (2001). Rather, the timeliness of information offered in support of a search warrant depends upon the underlying circumstances. *Id.* Greater lapses of time are justified with a protracted or continuing crime, such as growing marijuana. *Id.*

¶12     Here, Vang first argues that the search warrant affidavit was insufficient to establish the required nexus because it did not provide information about any known drug transactions that had occurred in the Mathews Street residence. Vang next contends that what he characterizes as the "small quantity" of marijuana recovered during the traffic stop was "consistent with personal use rather than drug trafficking." Vang also makes a related argument that five-month-old information from the controlled drug buy was too stale to support a probable cause determination.

5

¶13 Addressing the second point first, we note that the search warrant affidavit did not specify what quantity of marijuana was recovered in the traffic stop. Therefore, the circuit court could properly have assumed when issuing the search warrant that the amount of marijuana recovered during the traffic stop was consistent with drug trafficking. For the sake of argument, we could infer that the amount recovered was relatively small based on the fact that Vang was charged with possession, rather than with possession with intent to deliver. That would not change our analysis, however, because we are satisfied that the recovery of any amount of marijuana during the traffic stop supports a finding of probable cause in conjunction with the controlled buy and other information provided by the CI.

¶14 As to Vang's first argument, the CI reported having bought marijuana from Vang multiple times at his home in the past, and the amount of marijuana Vang sold to the CI during the controlled buy was substantial. Those two facts were more than sufficient to establish probable cause to believe that Vang was trafficking drugs from his 4th Avenue residence. Further, the marijuana recovered during the traffic stop showed that Vang was still involved in drug activity months after the controlled drug buy. Given that drug trafficking is the type of offense that tends to be protracted and ongoing, Vang's possession of marijuana at the time of the traffic stop highly suggested that he was still involved in drug trafficking. Finally, Westlund explained in great detail the types of items typically found in the residences of drug traffickers, and he provided information from multiple sources establishing that Vang was currently residing at the Mathews Street residence.

¶15 In sum, Vang has failed to demonstrate that the facts set forth in the search warrant affidavit were clearly insufficient to establish probable cause to

believe that items associated with drug trafficking would be found in Vang's new residence. We conclude the circuit court properly denied the suppression motion.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).